**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| **EDGAR JOSUE DIAZ RODAS,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| VS. | § | **CIVIL ACTION NO. 5:26-CV-00640** |
| | § | |
| **UNITED STATES ATTORNEY** | § | |
| **SOUTHERN DISTRICT OF TEXAS,** *et al.*, | § | |
| | § | |
| **Respondents.** | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Petitioner Edgar Josue Diaz Rodas's ("Petitioner") *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. 1), challenging the lawfulness of his detention by Immigration and Customs Enforcement (ICE) officials with the Department of Homeland Security (DHS).

For the reasons set forth below, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED IN PART**. Respondents' Motion for Summary Judgment, (Dkt. 12), is **DENIED**. Respondents are **ORDERED** to **RELEASE** Petitioner from custody immediately, under reasonable conditions of release no more restrictive than those in place prior to his redetention, and to submit a status report to the Court confirming Petitioner's release by **July 27, 2026, at 5:00 P.M. Central Standard Time (CST)**.

**Background**

**A. Factual Background**

Petitioner is a native and citizen of Honduras. (Dkt. 1 at 7; Dkt. 12 at 1.) He first entered the United States without inspection in 2006. (Dkt. 12 at 1.) At the time, he was placed into

1 / 11

expedited removal and removed from the United States to Honduras on February 27, 2006. (*Id.* at 1, Attach. 1 at 2.)[1] On May 1, 2019, Petitioner reentered the United States without inspection. (Dkt. 1 at 7; Dkt. 12 at 2.) Soon after, immigration authorities apprehended Petitioner and reinstated his prior order of removal under 8 U.S.C. § 1231(a)(5) on May 11, 2019. (Dkt. 12 at 2.) Thereafter, Petitioner was released from custody on an Order of Supervision ("OSUP") on May 15, 2019. (*Id.*; Dkt. 1 at 21.) Almost six years later, Petitioner was reapprehended by immigration authorities on March 12, 2025. (Dkt. 1 at 7; Dkt. 12 at 2.) At his scheduled Intensive Supervision Appearance Program ("ISAP") check-in appointment in Jacksonville, Florida, immigration authorities detained Petitioner and took him into custody. (Dkt. 1 at 7.) He was later transferred to Webb County Detention Center where he remains detained. (*Id.*)

While in immigration custody, Petitioner claimed a fear of return to Honduras and was given a reasonable fear interview where the asylum officer determined that Petitioner did not establish a reasonable fear of persecution or torture. (Dkt. 12 at 2, Attach. 3.) After Petitioner requested review of that decision, an immigration judge (IJ) issued a determination finding that Petitioner had demonstrated a reasonable fear of persecution or torture in Honduras and placed Petitioner in withholding-only proceedings on May 1, 2025. (Dkt. 12 at 2, Attach. 4.) In withholding-only proceedings, the IJ denied Petitioner's requests for withholding of removal under 8 U.S.C. § 1231(b)(3) and protection under the Convention Against Torture (CAT) on September 2, 2025. (Dkt. 12 at 2, Attach. 5.) Thereafter, Petitioner filed an appeal with the Board of Immigration Appeals (BIA), which remains pending. (Dkt. 12 at 2.)

**B. Procedural Background**

---

[1] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

Petitioner filed his Petition for Writ of Habeas Corpus on April 10, 2026. (Dkt. 1.) Petitioner argues that his prolonged and arbitrary detention without adequate procedural safeguards violates constitutional and statutory limits. (*Id.* at 4–17.) Additionally, he claims that his current detention after he was placed in ISAP and permitted to remain at liberty while he complied with his OSUP violates his due process rights. (*Id.* at 9–11.) He asks the Court to order his immediate release from custody. (*Id.* at 18.) The Court ordered Respondents to respond to Petitioner's petition on or before April 20, 2026. (Dkt. 5.) Respondents filed a timely response and Motion for Summary Judgment arguing that Petitioner is lawfully detained under 8 U.S.C. § 1231 pursuant to his reinstated removal order. (Dkt. 12.) Respondents claim that Petitioner's detention does not violate due process under *Zadvydas v. Davis*, 533 U.S. 678 (2001) because Petitioner cannot satisfy his burden of proof of showing that there is no significant likelihood of removal in the reasonably foreseeable future. (Dkt. 12 at 4–5.)

## Legal Standard

### A. 28 U.S.C. § 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). 28 U.S.C. § 2241(c)(3) authorizes "any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws. . . of the United States.'" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Accordingly, 28 U.S.C. § 2241 confers jurisdiction upon the federal courts to hear challenges to the lawfulness of immigration-related detention. *Id.* (citing 28 U.S.C. § 2241(c)(3)); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Baez v. Bureau of Immigr. &*

3 / 11

*Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

Moreover, a Court is not required to hold a hearing when the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted); *see also Trejo v. Warden of ERO El Paso E. Montana*, 2025 WL 2992187, at *2 (W.D. Tex. Oct. 24, 2025) (citations omitted).

### B. Rule 56(a)

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Rogers v. Bromac Title Servs.*, L.L.C., 755 F.3d 347, 350 (5th Cir. 2014). If the moving party meets its burden of demonstrating the absence of a genuine factual dispute, the non-movant must then come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party," and a "fact issue is 'material' if its resolution could affect the outcome of the action." *Canady v. Davis*, 687 F. App'x 362, 365 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013)). "Because this case arises in a summary judgment posture, we view the facts in the light most favorable to [Petitioner], the nonmoving party." *Id.* (quoting *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 603).

**Discussion**

On March 12, 2025, after living in the United States for nearly six years on an OSUP, Petitioner was abruptly taken into custody when he voluntarily appeared for his ISAP check-in appointment in Jacksonville, Florida. (*See* Dkt. 1 at 7.) The Court considers Petitioner's claim that

his current detention is unlawful under the Fifth Amendment's Due Process Clause.[2] Petitioner argues that he was detained without any articulated basis explaining the change in the decision to release him under ISAP. (*Id.* at 10.) Specifically, he claims ICE has not identified any new circumstance that justifies replacing his supervision with detention despite his ongoing compliance with supervision. (*Id.*) Without such justification, he argues that his detention is arbitrary and violates his due process rights. (*Id.* at 10–11.) In order to decide Petitioner's claim, the Court first evaluates which statute and regulations govern Petitioner's redetention before analyzing whether Respondents violated the applicable regulations by not providing Petitioner with the required process. Finding that Respondents violated the governing regulations, the Court then turns to the scope of relief that the Court should grant.

### A. Federal Regulations Govern Petitioner's Revocation

Section 1231 generally governs detention and supervision of a noncitizen subject to a "final order of removal." 8 U.S.C. § 1231. Petitioner was ordered removed in 2006, and that order of removal was reinstated in 2019. (Dkt. 12 at 1–2.) Because he is subject to a final removal order, his detention at that time was governed by 8 U.S.C. § 1231 and he was released on his OSUP under the corresponding regulations.[3] *See* 8 U.S.C. § 1231; 8 C.F.R. Part 241 ("Apprehension and

---

[2] As an initial matter, the Court has jurisdiction to hear Petitioner's claims challenging the lawfulness of his redetention by ICE. *See Nguyen v. Noem*, 2026 WL 237282, at *5–6 (S.D. Tex. Jan. 28, 2026) (analyzing the Court's jurisdiction to hear such claims); *see also Pham v. Bondi*, 2026 WL 969962, at *5 (S.D. Tex. Jan. 9, 2026) (citations omitted) ("The Court unquestionably has jurisdiction to review [Petitioner's] claims that the respondents have violated his statutory and constitutional rights to due process by re-detaining him.").

[3] Petitioner's OSUP states that he was released for lack of space. (Dkt. 1 at 22.) The Court assumes that Petitioner was released pursuant to 8 C.F.R. § 241.4, which provides procedures for noncitizens under a final order of removal who DHS has released after determining that they do not pose a danger or a flight risk, as opposed to 8 C.F.R. § 241.13, which provides procedures for noncitizens under a final order of removal who DHS has released after it established that there is not a significant likelihood of removal. However, both regulations require DHS to follow similar specified procedures for revocation of release.

5 / 11

Detention of Aliens Ordered Removed"). These regulations provide that the "[e]xecution of the reinstated order of removal and detention of the alien shall be administered in accordance with this part." 8 C.F.R. § 241.8(f). Therefore, the Court finds that this Part of the regulations applied to Petitioner at the time he was redetained and his OSUP was revoked in March of 2025. *See Galdamez v. Noem*, Civ. No. 5:25-cv-252, Dkt. No. 22 at 6–7 (S.D. Tex. Jan. 30, 2026) (finding that 8 C.F.R. Part 241 applied to the petitioner with a reinstated removal order when he was redetained and his OSUP was revoked).

Once a noncitizen subject to a removal order has been released from detention on an order of supervision, 8 C.F.R. Part 241 outlines the required procedures for when the noncitizen may be redetained and their supervision revoked. *See* 8 C.F.R. 241.4(l). A noncitizen's supervision may be revoked by an authorized ICE official if the noncitizen violates any of the conditions of supervision, if it becomes appropriate to enforce a removal order, or when the agency determines that release is no longer appropriate. *See* 8 C.F.R. § 241.4(l)(1), (2). However, the regulations are also clear that "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release or parole." 8 C.F.R. § 241.4(l)(1). Additionally, the regulations provide: "The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* Thus, given Petitioner was subject to a final order of removal when he was redetained in March of 2025, ICE was required to comply with these procedures in order to revoke his OSUP and redetain him.[4]

---

[4] Respondents do not make any argument that Petitioner was not entitled to these regulatory procedures. (*See generally* Dkt. 12.) Instead, they focus only on the authority to detain noncitizens subject to orders of removal under the limit on indefinite detention established in *Zadvydas*, 533 U.S. 678. (*Id.*) While Petitioner challenges his detention as prolonged, he also independently

### B. Respondents Did Not Comply with the Proper Revocation Procedures

Having established that Respondents were bound by the regulations for revocation of supervision outlined in 8 C.F.R. Part 241 when they redetained Petitioner in March of 2025, the Court turns to whether Respondents complied with those regulations. First, there is no indication that an Executive Commissioner, ICE's District Director, or a designee, authorized Petitioner's redetention as required by the regulations. *See Nguyen v. Noem*, 2026 WL 237282, at *9 (S.D. Tex. Jan. 28, 2026) (citing 8 C.F.R. 241.4(l)(2) ("absent a specific violation of the conditions of release, only designated, high-level ICE officials are authorized to revoke an [Order of Supervision] (including for the purpose of effectuating removal), namely the Executive Associate Commissioner"); *Villanueva v. Tate*, 801 F. Supp. 3d 689, 694 (S.D. Tex. 2025) ("[O]nly two officials have the authority to revoke an Order of Supervision."). "In the absence of some evidence showing that [Petitioner's] Order of Supervision was lawfully revoked by someone with the authority to do so . . . [Respondents have] failed to show that [they] afforded [Petitioner] with due process in connection with the purported revocation of his Order of Supervision." *See id.* at 699–700. Second, Petitioner was redetained without notice. Petitioner argues that he was not informed of the reason for being redetained, and Respondents do not argue otherwise. (*See* Dkt. 1 at 10; Dkt. 12, Attach. 1 at 2–3.) Finally, there is no evidence that Petitioner was given an interview or any opportunity to be heard prior to or shortly after being redetained as required by the regulations. *See* 8 C.F.R. § 241.4(l)(1) ("The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.").

---

challenges Respondents' revocation of his OSUP and his subsequent detention without any regulatory procedures on due process grounds. (*See* Dkt. 1 at 6–8.)

Indeed, Respondents do not contest Petitioner's arguments regarding his OSUP revocation or attempt to claim that they complied with any applicable regulations when redetaining Petitioner. (*See generally* Dkt. 12.) Accordingly, it is clear that Respondents did not comply with the proper revocation procedures when redetaining Petitioner after he lived at liberty in the United States for nearly six years in compliance with his supervision requirements. As such, the Court finds that Petitioner did not receive the procedural due process he was entitled to under the regulations before the revocation of his OSUP. *See Galdamez*, Civ. No. 5:25-cv-252, Dkt. No. 22 at 8 (holding that the government failed to follow the regulations before revoking the petitioner's OSUP in violation of the petitioner's rights to procedural due process under the regulations).

### C. Immediate Release is the Appropriate Remedy

As Respondents failed to follow the governing regulations, the Court turns to the question of what relief is warranted. The Supreme Court has held that executive agencies are bound by their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Gulf States Mfrs., Inc. v. Nat'l Labor Relations Bd*., 579 F.2d 1298, 1308 (5th Cir. 1978) (citations omitted) ("It is well settled that an Executive Agency of the Government is bound by its own regulations, which have the force and effect of law, and the failure of an agency to follow its regulations renders its decision invalid."); *see also Bonitto v. Bureau of Immigr. & Customs Enf't*, 547 F. Supp. 2d 747, 755 (S.D. Tex. 2008) (citing *Vitarelli v. Seaton*, 359 U.S. 535, 547 (1959); *Accardi,* 347 U.S. 260; *Bridges v. Wixon,* 326 U.S. 135 (1945) ("Where individual interests are implicated, the Due Process clause requires than an executive agency adhere to the standards by which it professes its action to be judged."). In some contexts, courts have held that a violation of the regulations alone does not necessarily warrant relief unless there is a showing of prejudice. *See Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 177 (3d Cir. 2010) (citations omitted) (explaining that "[c]ourts have taken

8 / 11

diverse approaches to reconciling the tension between [*Am. Farm Lines v. Black Ball Freight Service,* 397 U.S. 532 (1970) in which the Supreme Court first required a showing of prejudice] and *Accardi*, some imposing explicit prejudice requirements"); *see, e.g., Shave v. Apfel*, 238 F.3d 592, 596–97 (5th Cir. 2001) (requiring a showing of prejudice in the context of evaluating the social security administration's violation of its own internal procedures); *McKoy v. Fox*, 587 F. App'x. 802, 804–05 (5th Cir. 2014) (citations omitted) (requiring that a prisoner "establish that he was prejudiced by the constitutional violation to obtain habeas relief.").

However, the Court finds that the relevant regulations afford imperative procedural safeguards to noncitizens such as Petitioner and that failure to comply with those regulations is prejudicial. *See Ortiz-Garcia v. Warden of Webb County Detention Center*, Civ. No. 5:26-cv-00399, Dkt. No. 14 at 11–12 (S.D. Tex. July 15, 2026) (evaluating whether a petitioner is prejudiced by the government's failure to provide him with the process required by the governing revocation regulations outlined in 8 C.F.R. Part 241); *see also Rodriguez Romero v. Ladwig*, 2026 WL 321437, at *9 (M.D. La. Feb. 6, 2026) (finding that "[m]ultiple courts within this circuit and throughout the country, being faced with fact patterns nearly identical to Petitioners', have considered the regulations discussed above and found" that where the governing regulations are intended to provide due process, prejudice is presumed). Finding that Petitioner was prejudiced by Respondents' failure to comply with the revocation regulations, the Court addresses the appropriate remedy.

"Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Accordingly, the Court finds that where Respondents unlawfully detained Petitioner, the appropriate relief is Petitioner's immediate release from detention. *See Ortiz-Garcia*, Civ. No. 5:26-cv-00399, Dkt.

9 / 11

No. 14 at 13–14; *see also Rodriguez Romero*, 2026 WL 321437, at *17 (collecting cases) ("As a remedy, courts across the country have ordered the release of individuals stemming from ICE's illegal detention."); *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025) (citing 28 U.S.C. § 2241(c)(3)) ("Because [Petitioner] is 'in custody in violation of the . . . laws . . . of the United States,' he is entitled to habeas relief."); *Villanueva*, 801 F. Supp. 3d at 705 (ordering the petitioner's immediate release after considering the factors set out by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976) and finding "that the balance of the factors establishes that the government violated [petitioner's] due process rights by re-detaining him without complying with its own regulations and the law"); *Galdamez*, Civ. No. 5:25-cv-252, Dkt. No. 22 at 6 (same). The Court agrees with the many courts that have ordered the immediate release of petitioners who have been unlawfully detained after the Government failed to follow the regulations governing redetention and revocation of supervised release for noncitizens subject to a final order of removal.

Thus, the Court holds that because Petitioner's detention violates his rights under the Due Process Clause of the Fifth Amendment, he is entitled to equitable relief and that the appropriate remedy is Petitioner's immediate release from custody.

### CONCLUSION

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED IN PART**. Respondents' Motion for Summary Judgment, (Dkt. 12), is **DENIED**.

Respondents are hereby **ORDERED** to immediately release Petitioner from custody under reasonable conditions of supervision, no more restrictive than those in place when Petitioner was detained in March of 2025. Respondents are **ORDERED** to notify the Court of the status of Petitioner's release **by July 27, 2026, at 5:00 P.M. Central Standard Time (CST)**.

Respondents are also **ORDERED** to return any and all identification documents and personal belongings taken from Petitioner at the time of apprehension or during detention and provide Petitioner with a printed copy of this Order.

It is further **ORDERED** that any revocation of Petitioner's OSUP must be made pursuant to the relevant regulations and procedures governing revocation at 8 C.F.R. Part 241.

IT IS SO ORDERED.

SIGNED this July 24, 2026.

Diana Saldaña
United States District Judge